RICHARD L. HOLMES, Retired Appellate Judge.
Rental Uniform Services of Birmingham, Inc. (RUS), filed a complaint against CSX Transportation, Inc. (CSX). The complaint alleged the following: On September 17, 1990, while attempting to switch railroad cars from one track to another, CSX negligently allowed one of the railroad cars to puncture an ammonia tank located near RUS’s place of business. As a result of the accident, a cloud of ammonia permeated RUS’s place of business. RUS contends that it has suffered lost profitability, increased costs, and other consequential and incidental damages because of the accident.
CSX filed an answer, and the case proceeded to a jury trial in June 1995. The jury returned a verdict in favor of RUS and assessed damages at $37,139.33.
RUS filed a motion for a new trial. In its motion, RUS alleged the following, in pertinent part:
“During the jury selection process, [CSX] made a Teverse-Batson challenge of [RUS’s] peremptory strike of juror number 287.... Counsel for [RUS] explained that the reason he struck [juror number 287] was that [juror number 287] was a licensed, practicing attorney, and that based upon the issues to be tried in this case (causation and damages), [RUS] did not want [juror number 287] to be questioned by other members of the jury during deliberations regarding the meaning of such phrases as ‘proximate cause,’ ‘compensatory damages,’ and other items which were the sole province of the court’s charge to the jury. Counsel for [RUS] explained that, race notwithstanding, [RUS] would have struck [juror number 287] due to the fact that [juror number 287] was a practicing attorney. The court sustained [CSX’s] revers e-Batson challenge of [juror number 287] and put [juror number 287] back on the jury panel.... As it turned out, [juror number 287 was] the foreman of the jury. [RUS] contends that this court erred in sustaining [CSX’s] revers e-Batson challenge of [RUS’s] peremptory challenge of [juror number 287], in light of the fact that [RUS] provided the court with a race-neutral reason for striking [juror number 287], i.e., the fact that [juror number 287] was a practicing attorney.”
The trial court denied the motion for a new trial. RUS appeals.
The issue on appeal is whether the trial court was clearly erroneous in sustaining CSX’s revers e-Batson challenge of juror number 287 and in restoring juror number 287 to the jury panel.
Our review of the record reveals the following: The jury venire consisted of seven blacks and seventeen whites, with four black alternates. RUS exercised its peremptory *1330 challenges to strike five whites and two blacks (one an alternate) from the venire, CSX exercised its peremptory challenges to strike five blacks (one an alternate) and two whites from the venire.
During jury selection, RUS made a Batson objection to the five black venire members struck from the jury venire by CSX. The trial court sustained RUS’s Batson challenge and ordered that one of the black venire members be restored to the jury panel.
Thereafter, CSX made a revers e-Batson objection to the five white venire members struck by RUS, one of whom was juror number 287. The trial court sustained CSX’s reverse-Batson challenge of juror number 287 and ordered that juror number 287 be restored to the jury panel.
We would note that our supreme court stated the following in Ex parte Lynn, 543 So.2d 709, 712 (Ala.1988):
“It is within the sound discretion of the trial court to determine if the [striking attorney’s] peremptory challenges of black jurors are motivated by intentional racial discrimination. Moreover, the trial court’s findings as to whether the [opponent of the strike] has established purposeful racial discrimination are to be accorded great deference on appeal, and should be reversed on appeal only if they are clearly erroneous.”
(Citations omitted.)
RUS contends that its explanation of its peremptory challenge of juror number 287— juror number 287 was a practicing attorney and the other members of the jury might rely on juror number 287’s “expertise” in reaching a verdict — was a race-neutral explanation for its strike of juror number 287. RUS further contends that because there was no evidence of discriminatory intent, the trial court should have accepted RUS’s explanation for the strike of juror number 287.
CSX contends that the attorney for RUS improperly relied upon juror number 287’s occupation as a race-neutral explanation for its peremptory challenge. CSX points out that during voir dire, there were no questions asked of juror number 287 after he introduced himself. CSX emphasizes that juror number 287 was not questioned regarding whether the fact that he was a practicing attorney would influence his decision or cause him to influence the other jurors’ decisions.
The United States Supreme Court recently stated the following in Purkett v. Elem, — U.S.-,-, 115 S.Ct. 1769, 1770-1771, 131 L.Ed.2d 834, 839 (1995):
“Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination. The second step of this process does not demand an explanation that is persuasive, or even plausible. ‘At this [second] step of the inquiry, the issue is the facial validity of the prosecutor’s explanation. Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral.’
“... It is not until the third step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of the persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.”
(Emphasis in original) (citations omitted).
Our supreme court stated the following in Ex parte Branch, 526 So.2d 609, 624 (Ala. 1987):
*1331 “Once the [striking attorney] has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext. Other than reasons that are obviously contrived, the following are illustrative of the types of evidence that can be used to show sham or pretext:
[[Image here]]
“2. There was a lack of questioning to the challenged juror, or a lack of meaningful questions.
[[Image here]]
“6. ‘[A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.’ For instance, an assumption that teachers as a class are too liberal, without any specific questions having been directed to the panel or the individual juror showing the potentially liberal nature of the challenged juror.”
(Citations omitted.)
In Norfolk Southern Railway Co. v. Gideon, 676 So.2d 310, 312 (Ala.1996), our supreme court stated the following:
“Counsel for Norfolk Southern stated that it struck black veniremember J.A. because he worked for the Dunlop Tire Company, where a witness was also employed, and because J.A. was probably a union member and union members, counsel said, are generally more ‘plaintiff-oriented.’ The record shows that counsel for Norfolk Southern did not question J.A. directly during voir dire. Further, the panel was never asked whether any were union members. Finally, the panel asked whether they knew the particular witness in question or whether they knew anything about the ease. J.A. did not answer affirmatively to either question.
“We conclude that the trial court’s determination that juror J.A. was struck for discriminatory reasons is not clearly erroneous. Counsel for Norfolk Southern did not engage in any meaningful voir dire on which it could base its explanations. This provided the trial court a proper basis for holding that Norfolk Southern had failed to provide legitimate race-neutral reasons for its strike.”
As noted above, a trial court’s findings regarding whether purposeful racial discrimination has been established is accorded great deference on appeal, and its judgment should be reversed only if clearly erroneous. Ex parte Lynn, 543 So.2d 709. We have reviewed the record on appeal, and in light of the totality of the circumstances, we defer to the trial court’s determination in this particular case.
As previously noted, RUS used five of its seven peremptory challenges to strike white venire members. Additionally, there was a lack of questions directed to juror number 287. Consequently, RUS is unable to offer any evidence in support of its contention that an alleged trait of attorneys as a group— providing extra-judicial explanations of the law to the other jury members without being instructed to do so by the trial court — applies to juror number 287 specifically. See Ex parte Branch, 526 So.2d 609.
However, we should not be understood as holding that a party’s exercise of its peremptory challenge to strike an attorney from a jury venire is, in and of itself, impermissible.
The judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED.
ROBERTSON, P.J., and THIGPEN and MONROE, JJ., concur.