This is an appeal from the appellant's conviction of rape in the second degree, a violation of § 13A-6-62, Code of Alabama
1975. The appellant was sentenced, pursuant to § 15-18-8, Codeof Alabama 1975, the Split Sentence Act, to 10 years' imprisonment, with three years to be spent in actual confinement.[1]
 I.
The appellant first argues that this court should declare the peremptory challenge system unconstitutional. The record reflects that, before his jury was empaneled, the appellant made a motion, pursuant to Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and J.E.B. v. Alabama,511 U.S. 127, 114 S.Ct. 1419, *Page 222 128 L.Ed.2d 89 (1994), in which he claimed that the State had used its peremptory challenges to remove prospective jurors on the bases of race and gender. During the argument on hisBatson motion, the appellant stated the following to the trial court:
 "What happens now in voir dire, rather than us sitting here representing our clients is we engage in a lot of stuff like we look at someone and say he has a beard. If I strike him later, that's going to be my reason for striking him. And I think that puts the lawyers in a terrible position, and I ask you to declare the jury selection in Alabama — the way it's being practiced — unconstitutional under Alabama law, under the Alabama Constitution and not the United States Constitution."
The appellant's contention that the use of peremptory challenges in the jury selection process should be deemed unconstitutional was rejected by the United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), and J.E.B. v. Alabama, 511 U.S. 127,114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), wherein the Court held that the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, and by the Alabama Supreme Court in Ex parte Branch, 526 So.2d 609, 628 (Ala. 1987). None of these decisions hold that the mere existence of the peremptory challenge, which allows the parties in criminal and civil jury trials to remove persons from petit juries for reasons amounting to less than cause, violates the Equal Protection Clause of the Fourteenth Amendment. Rather, each of these cases stands for the proposition that a violation of the Equal Protection Clause occurs only when peremptory challenges are used to purposefully exclude persons from trial juries based on their race or gender. Batson, 476 U.S. at 96,106 S.Ct. at 1722-23; Ex parte Branch, 526 So.2d at 624-28. See also, Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348,120 L.Ed.2d 33 (1992) (use of peremptory challenges permissible; the rule of law in Batson was extended to include defense counsel in criminal cases).
Moreover, the procedure used in Alabama for jury selection in criminal trials was established by the Alabama Supreme Court in Rule 18.4, Ala.R.Crim.P., pursuant to the Alabama Supreme Court's rule-making authority under § 12-2-7(4), Code ofAlabama 1975. It is therefore reasonable to conclude that the jury selection process used in criminal trials is one that the Alabama Supreme Court believes best serves the ends of justice and the needs of this state.
Further, the question whether the interests of this State would be better served by a method of jury selection that does not incorporate the use of peremptory challenges is not one which this court may properly decide. This court is bound by the decisions of the Alabama Supreme Court. See § 12-3-16, Codeof Alabama 1975. Cf. E.T. v. State, 682 So.2d 508 (Ala.Cr.App. 1996). As stated earlier in this opinion, the Alabama Supreme Court decided this issue adversely to the appellant in its decision in Ex parte Branch, 526 So.2d 609, 628 (Ala. 1987), and we are bound by that court's decision.
 II.
Finally, the appellant argues that the prosecution used its peremptory challenges to remove certain members of his venire solely because of their race and gender, in violation ofBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), and J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419,128 L.Ed.2d 89 (1994). The appellant argues therefore that the trial court's denial of his Batson motion was "clearly erroneous" and that his conviction should be reversed and this cause remanded for a new trial. Because we believe that the reasons articulated by the prosecution for striking several veniremembers were pretextual and that the veniremembers were impermissibly removed from the appellant's jury solely for reasons of race or gender, this court must remand this cause to the circuit court for a new trial.
In Ex parte Brooks, 695 So.2d 184 (Ala. 1997), the Alabama Supreme Court summarized the present state of Alabama's Batson
jurisprudence. The Brooks court held, in pertinent part, as follows:
 "The party alleging discriminatory use of a peremptory strike bears the burden of *Page 223 
establishing a prima facie case of discrimination. Ex parte Branch, 526 So.2d 609, 622 (Ala. 1987). Where, as in this case, the trial court requires the opposing counsel to state race-neutral reasons for peremptory strikes, without first requiring that a prima facie case of discrimination be shown, this Court will review the reasons given and the trial court's ultimate decision on the Batson
motion without any determination of whether the moving party met its burden of proving a prima facie case of discrimination. Norfolk Southern Ry. v. Gideon, 676 So.2d 310 (Ala. 1996), citing Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). When the trial court has required a party to state reasons for the strikes, that party must articulate reasons that are clear, specific, and legitimate, that relate to the particular case, and that are nondiscriminatory. Ex parte Bird, 594 So.2d 676, 679 (Ala. 1991); Carter v. State, 603 So.2d 1137
(Ala.Crim.App. 1992); Adkins v. State, 639 So.2d 515 (Ala.Crim.App. 1993), aff'd, 639 So.2d 522
(Ala.), cert. denied, [513 U.S. 851] 115 S.Ct. 151, 130 L.Ed.2d 90 (1994). After race-neutral reasons have been articulated, the moving party can offer evidence showing that those reasons are really a sham or pretext. Ex parte Branch, 526 So.2d 609 at 625. On appeal, the trial court's ruling on the question whether the responding party offered legitimate race-neutral reasons will not be overturned unless it is clearly erroneous. K.S. v. Carr, 618 So.2d 707, 710 (Ala. 1993), citing Ex parte Branch, 526 So.2d at 622."
695 So.2d at 190. It is also true that, where as here, the State has failed to articulate a legitimate reason for an earlier strike, its subsequent strikes are exposed to greater scrutiny. In Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991), a decision cited with approval in Ex parte Brooks, supra, the Alabama Supreme Court held the following:
 "Although one unconstitutional peremptory strike requires reversal and a new trial, we take this opportunity to accentuate the specific weaknesses of the State's explanations regarding a number of its challenges. In doing so, we point out that the State's failure to articulate a legitimate reason for its challenge of veniremember number 26 exposes its rationale for subsequent strikes to greater scrutiny. See State v. Antwine, 743 S.W.2d 51, 64 (Mo. 1987). Thus, even explanations that would ordinarily pass muster become suspect where one or more of the explanations are particularly fanciful or whimsical."
This court has held that a finding is "clearly erroneous" when, although there is evidence to support the findings, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.Fletcher v. State, 703 So.2d 432 (Ala.Cr.App. 1997); Davis v.State, 555 So.2d 309, 312 (Ala.Crim.App. 1989). In determining whether the reasons given by the State for its peremptory challenges are pretextual, the trial court has a duty to consider the evidence offered by both the State and by the defense in rebuttal and to recognize that discrimination in the selection of criminal juries is not unlike discrimination in any other form: it is often accomplished discretely and cunningly, and it is difficult to detect.
In Crews v. State, [Ms. CR-95-1150, December 20, 1996] ___ So.2d ___ (Ala.Cr.App 1996), this court noted that:*
 " ' "The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, see [People v.] Hall, 35 Cal.3d [161,] . . . 168, 672 P.2d [854,] . . . 858-59, 197 Cal.Rptr. [71,] . . . 75 [(1983)]; Slappy [v. State], 503 So.2d [350,] . . . 356 [(Fla.Dist.Ct.App. 1987)]; the judge must consider whether racially neutral explanations are contrived to avoid admitting acts of group discrimination. See Slappy, supra. This evaluation by the trial judge is necessary because it is possible that an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge a back juror, when race may be his primary factor in deciding to strike the juror." ' "
Crews v. State, supra, at ___; quoting Walker v. State,611 So.2d 1133, 1139 *Page 224 
(Ala.Crim.App. 1992), quoting, in turn, Ex parte Branch, 526 So.2d at 624. (Emphasis supplied.) To paraphrase Justice Powell's admonition in Batson: "[T]he defendant is entitled to rely on as fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " Trial courts should be mindful of this fact. 476 U.S. at 96,106 S.Ct. at 1723 (quoting Avery v. Georgia, 345 U.S. at 562,73 S.Ct. at 892).
In Ex parte Trawick, 698 So.2d 162 (Ala. 1997), the Alabama Supreme Court addressed the application of the United States Supreme Court's decision in J.E.B. v. Alabama ex rel. T.B.,511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994)[2], to Batson
motions. The court held in Trawick that the factors enumerated in Ex parte Branch, 526 So.2d 609 (Ala. 1987), and Ex parteBird, 594 So.2d 676 (Ala. 1991) for determining whether aBatson violation existed could also be applied to determine whether the reasons given by the State for its strikes are gender-based in nature:
 "In J.E.B. v. Alabama, the United States Supreme Court extended the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to apply to gender discrimination in jury selection. A party making a Batson or J.E.B.
challenge bears the burden of proving a prima facie case of discrimination and, in the absence of such proof, the prosecution is not required to state its reasons for its peremptory challenges. Ex parte Branch, 526 So.2d 609 (Ala. 1987); Ex parte Bird, 594 So.2d 676 (Ala. 1991). In Branch, this Court discussed a number of relevant factors a defendant could submit in attempting to establish a prima facie of racial discrimination; those factors are likewise applicable in the case of a defendant seeking to establish gender discrimination in the jury selection process. Those factors, stated in a manner applicable to gender discrimination, are as follows: (1) evidence that the jurors in question shared only the characteristic of gender and were in all other respects as heterogenous as the community as a whole; (2) a pattern of strikes against jurors of one gender on the particular venire; (3) the past conduct of the state's attorney in using peremptory challenges to strike members of one gender; (4) the type and manner of the state's questions and statements during voir dire; (5) the type and manner of questions directed to the challenged juror, including a lack of questions; (6) disparate treatment of members of the jury venire who had the same characteristics or who answered a question in the same manner or in a similar manner; and (7) separate examination of members of the venire. Additionally, the court may consider whether the State used all or most of its strikes against members of one gender."
Ex parte Trawick, 698 So.2d at 167-68. (Emphasis supplied.)
In the present case, the argument made by the appellant in support of his Batson motion was quite lengthy and, after the State gave its reasons for exercising its peremptory challenges, the defense's rebuttal was also fairly long. The record pertaining to the jury selection process, including the argument relating to the appellant's Batson motion, established the following facts:
Each party had 11 peremptory strikes, and the State used its first 9 strikes to remove men, a slight majority of whom were black, from the appellant's jury. The State used its final two strikes to remove a black female and a white female from the jury. The trial court noted that three or four blacks remained on the appellant's jury.
The State used its first strike to remove veniremember number 3, who apparently was a black male, from the jury.[3] The *Page 225 
reasons the State gave for removing this veniremember were that he was an engineer employed by International Paper Company and that he was "real quick" to answer. The prosecutor thought that this individual might be quick to identify with the defendant, but he gave no reason why he believed this to be true and did not ask any questions on voir dire regarding this subject.See Ex parte Bird, 594 So.2d 676, 684 (Ala. 1991) ("[u]narticulated 'gut feelings' about a veniremember will not rebut a Branch challenge.").
This court finds that the facts pertaining to the State's strike of veniremember number 3, the engineer, based in part on his level of education, closely parallels the reasons given in a case reviewed by the Alabama Court of Civil Appeals. InRental Uniform Services of Birmingham, Inc. v. CSX,675 So.2d 1328 (Ala.Civ.App. 1996), the appellee made a Batson motion during jury selection, arguing that the appellant had erroneously struck a practicing attorney from the jury venire for reasons of race. Counsel for the appellant argued that, ignoring race, the appellant would have struck this veniremember simply because he was a practicing attorney. The trial court sustained the appellee's Batson motion and returned the attorney to the jury panel. On appeal, the Alabama Court of Civil Appeals affirmed the trial court's ruling, observing that the appellant had failed to ask the attorney any questions during jury voir dire, and thus, did not obtain any responses that would raise a reasonable inference that he could not follow the trial court's instructions as to the applicable law:
 "As previously noted, RUS used five of its seven peremptory challenges to strike white venire members. Additionally, there was a lack of questions directed to juror number 287. Consequently, RUS is unable to offer any evidence in support of its contention that an alleged trait of attorneys as a group — providing extra-judicial explanations of the law to the other jury members without being instructed to do so by the trial court — applies to juror number 287 specifically. See Ex parte Branch, 526 So.2d 609."
Rental Uniform Services of Birmingham, Inc. v. CSX, supra, at 1331. In so holding, the Rental Uniform Services court relied on the United States Supreme Court's opinion in Purkett v.Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), and the Alabama Supreme Court's opinion in Norfolk Southern Ry. Co.v. Gideon, 676 So.2d 310, 312 (Ala. 1996).
In the present case, the record reflects that veniremember number 3 responded affirmatively to the voir dire question that inquired whether he had read anything about this case. Here, as was the case in Rental Uniform Services, the challenged veniremember was not asked any questions about how his education might affect his deliberations or his ability to follow the trial court's oral charge as to the applicable law. Thus, the educational level of veniremember number 3 must be viewed as a group-based, pretextual reason for striking him. Exparte Trawick, 698 So.2d at 167; Ex parte Branch, 526 So.2d at 609.
The State also alleges that it struck veniremember number 3 because he was about the same age as the defendant. Strikes based on a veniremember's age are subject to close scrutiny. "This Court has recognized that 'the age rationale is highly suspect because of its inherent susceptibility to abuse.Batson, 476 U.S. at 106, 106 S.Ct. at 1728 (Marshall, J., concurring).' Ex parte Bird, supra, at 676, 683. In fact, '[a] mere summary declaration that age was a factor in the decision to strike is, therefore, constitutionally deficient and warrants reversal. Owens v. State, 531 So.2d 22, 26
(Ala.Crim.App. 1987).' Bird, at 683." Ex parte Brown, 686 So.2d 409, 416
(Ala. 1996).
The State also concluded, for no reason supported by the record, that veniremember number 3 may possibly have been involved with younger women. However, the State did not engage this veniremember in any follow-up voir dire questions to determine if the prosecutor's speculation was correct. Strikes based on highly subjective hunches and intuition are disfavored. See Ex parte Bird, supra, at 676, 684 ("[u]narticulated 'gut *Page 226 
feelings' about a veniremember will not rebut a Branch
challenge.").
 "In Bird, the Alabama Supreme Court held that 'the failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination' and that 'if the prosecut[or] thinks that a veniremember may be related to a former defendant, [he] must ask the veniremember.' Id. (Citations omitted; emphasis added.) The Bird court also noted that 'a simple question directed to the veniremember could have dispelled any doubt about a possible relationship.'
(Emphasis added.) A 'prosecutor's self-imposed ignorance [should not] preclude a Batson claim.' Id. (quoting, Note, Batson v. Kentucky and the Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection, 74 Va. L.Rev. 811, 827 (1988))."
Walker v. State, 611 So.2d 1133, 1139 (Ala.Cr.App. 1992).
The State's second strike was used to remove veniremember number 4, a white male who appeared to have a grievance against the Department of Human Resources (DHR) because he had been denied food stamps. A DHR caseworker was a potential witness for the State in the case. Therefore, this strike was clearly race-neutral.
The State's third strike was used to remove veniremember number 25, a black male, from the jury. The reason the State gave for striking this veniremember was that he admitted to watching television talk shows such as "The Ricki Lake Show." However, the record shows that two other veniremembers who admitted to watching talk shows of a similar nature, K.G., number 13, and another veniremember whose identity cannot be determined from the record[4], were not struck for this reason. InEx parte Branch, 526 So.2d 609, 622-23 (Ala. 1987), the Alabama Supreme Court explained that one of the factors in determining whether a reason offered by the prosecution was pretextual was the disparate treatment of veniremembers sharing the same characteristics or who gave similar responses. The fact that the State struck veniremember number 25 for watching television talk shows when it clearly did not remove other veniremembers for the same reason is an example of the disparate treatment condemned in Branch, supra. Because the reason given by the State for this strike is not supported by the record, it must also be viewed as predicated on either race or gender, or both.
The State's fourth strike was used to remove veniremember number 35, a black male. The reasons given for the strike were the fact that he was friends with veniremember number 4 (the veniremember who bore a grudge against DHR) and the prosecutor believed that this veniremember might be influenced by number 4. This was a race-neutral reason for striking number 35.
The State's fifth strike was used to remove veniremember number 39, a black male, from the jury. In explaining his reasons for removing this veniremember, the prosecutor said that the veniremember did not respond to any questions and that "[H]e appeared to be someone who would [sic]." Voir dire cannot assume bias or partiality on the part of the struck juror. See generally, Parker v. State, 568 So.2d 335 (Ala.Cr.App. 1990) (speculative for the State to assume bias or partiality on the part of the struck veniremember). Furthermore, where as here, the reasons given by the State for striking a prospective juror are not supported by the record, they are not sufficient. See,e.g., Kynard v. State, 631 So.2d 257 (Ala.Cr.App. 1993). Finally, "gut feelings" will not rebut a Batson challenge. Exparte Bird, supra, at 676, 684.
Indeed, the record is devoid of any evidence that veniremember number 39 failed to respond to any questions that he had an obligation to answer. The prosecutor stated during argument on the appellant's Batson motion that, "When asked questions that would have evoked a response from somebody in [the veniremember's] position, he did not respond at all." The prosecutor never explained what this veniremember's "position" was or why his "position" should have *Page 227 
evoked responses to questions asked during voir dire, and the record fails to show that this veniremember possessed any special characteristic that would warrant a specific response to the questions asked by the State. Moreover, the trial judge also failed to inquire into the reasons given by the State for this strike, Crews v. State, ___ So.2d at ___, and the prosecutor failed to ask this veniremember any follow-up questions on voir dire. For the above reasons, we believe that the reasons offered by the State for striking veniremember number 39 were pretextual and that the removal of this veniremember was based on race or gender or both.
The State's sixth strike was used to remove veniremember number 1, a white male, from the jury. This veniremember may have served as a juror before and did, in fact, respond to some of the prosecutor's questions. He was struck because the prosecutor did not like "his manner of dress" and because his facial expression allegedly disclosed that he had "rather not be here."[5] The prosecutor then observed that this veniremember was privately-employed as a custom screen and window installer, and that "we were probably taking him away from his business now was the impression I got, and that he would be . . . that serving jury time, he'd have his mind somewhere else instead of listening to the close details of this case." However, because this court has upheld a strike based upon a veniremember's untidy appearance, Mitchell v. State, 579 So.2d 45, 49-50
(Ala.Cr.App. 1991), we must consider this reason to be race-neutral.
The State's seventh strike was used to remove number 27, a black male, from the jury. This veniremember listed his employment on a juror questionnaire as an animal control officer with the City of Mobile. However, during voir dire, this veniremember indicated that he was unemployed. The prosecutor indicated that he had recently been involved in an argument with the animal control unit of the City of Mobile because someone in that unit had erroneously euthanized a dog and then lied about doing so. The prosecutor raised concerns about veniremember number 27's connection with animal control and an inconsistency concerning his employment status on his jury questionnaire, but he never questioned this juror about these matters. While the better practice would have been to ask this veniremember follow-up questions about the prosecutor's unresolved concerns, the veniremember's inconsistent answers regarding his employment renders his removal race-neutral.
The State's eighth strike was used to remove veniremember number 40, a white male, because he "should have answered a number of questions that came out and responded [sic]." The prosecutor did not explain why this veniremember would have any greater reason to speak out than any other member of the venire, and he did not ask number 40 any follow-up questions on voir dire. The prosecutor also alleged that this veniremember appeared as though he could not reach a decision and that he showed no emotion. This reason appears to be based purely on the prosecutor's "gut reaction" or "hunch," a practice which was criticized in Ex parte Bird, 594 So.2d 676, 684 (Ala. 1991).
The State exercised its ninth strike to remove veniremember number 19, a white male, from the jury. The prosecutor stated that number 19 had previously been a juror in a criminal trial in which a guilty plea was entered halfway through the trial. The prosecutor said that he thought that this veniremember would not have any sympathy "toward listening to the victim's side in this opportunity [sic], and that he would base a decision on other than what the law was . . . rather than listening to the evidence." The prosecutor gave no reason for this other than it was "kind of just a personal thing." This was not a race-neutral reason. Ex parte Bird, 594 So.2d 676,684 (Ala. 1991); Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987). ("[u]narticulated 'gut feelings' about a veniremember will not rebut a Branch challenge"). *Page 228 
The State's tenth strike was used to remove a black female, number 23, who was employed as a registered nurse. One of the two reasons that the prosecutor gave for striking this veniremember was that "[t]here are some authorities who believe that the fewer the women that you have on a rape case, the . . . as jurors, the better." This appears to be exactly the sort of gender-based reason for exercising peremptory challenges condemned by the United States Supreme Court in J.E.B. v.Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). The prosecutor further stated that, given this veniremember's background and education, he expected her to speak out more. However, the prosecutor did not say why he thought she would speak out more, especially since his voir dire questions did not appear to be the kind that would necessarily elicit any reaction from another similarly-situated veniremember. This appears to be nothing more than a group-based strike of the kind that was condemned in Ex parte Trawick, supra, and Exparte Branch, 526 So.2d 609. Therefore, the reasons given by the State for striking veniremember number 23 were necessarily pretextual and were either based on gender or race.
Finally, the State struck veniremember number 5, a white female, because she appeared to be confused as to the differences between a criminal and a civil trial. We find this to be a gender-neutral reason for striking this veniremember. See, Wilson v. State, 652 So.2d 778 (Ala.Cr.App. 1994) (permissible to strike juror who appeared confused to the prosecutor and the trial judge).
In support of its argument that the reasons given for the prosecution's strikes were both race and gender neutral, the State relies on the United States Supreme Court's decision inPurkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834
(1995), in which the Court appears to tacitly overrule key provisions of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986). In Batson, the Supreme Court held that, to rebut a prima facie Batson violation, the proponent of a strike (most often, the government), "must give a 'clear and reasonably specific' explanation for exercising the [peremptory] challenges" Batson, 476 U.S. at 98 n. 20,106 S.Ct. at 1724 n. 20, (quoting Texas Dept. of Community Affairsv. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089 1096,67 L.Ed.2d 207 (1981)), and that the reason must be "related to the particular case to be tried." 476 U.S. at 98,106 S.Ct. at 1724. In Purkett, the Court held that the meaning of a "legitimate reason" under Batson is not necessarily a reason that makes sense, "but a reason that does not deny equal protection." 514 U.S. at 769, 115 S.Ct. at 1771.
However, Purkett, when read together with Ex parte Brooks,695 So.2d 184 (Ala. 1997), and Ex parte Trawick, supra, dispels any impression that a reason offered by the proponent of a strike that is whimsical or fantastical will be deemed race or gender neutral under Alabama law.
As the Purkett Court held:
 "It is not until the third step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. Batson, supra, at 98, 106 S.Ct., at 1723; Hernandez, supra, at 359; 111 S.Ct., at 1865
(plurality opinion). At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious. . . ."
Purkett, supra at 769, 115 S.Ct. at 1771 (some emphases supplied, some citations omitted).
The primary purpose of Ex parte Brooks, supra, and Ex parteTrawick, supra, both decided after Purkett, supra, is to provide the courts, prosecutors, and defense counsel with much needed guidance in the aftermath of Purkett, as to the criteria used to determine whether the reasons given by the State for its strikes were pretextual and therefore gender-based or racial-based in nature. *Page 229 
Both decisions would be devoid of meaning otherwise. Ex parteBrooks, supra, and Ex parte Trawick, supra, which both rely heavily on Ex parte Branch, 526 So.2d 609 (Ala. 1987), and Exparte Bird, 594 So.2d 676 (Ala. 1991) — cases that themselves turned on the question whether veniremembers from different races and genders were treated the same during voir dire examination — lay to rest any argument advanced by the State in this case that its strikes were used in a race-neutral and gender-neutral manner. In fact, veniremember number 23, a black female who was employed as a registered nurse, appears to have been struck simply because she was a female.
Because this court, after reviewing all of the evidence related to the appellant's Batson motion, is left with the definite and firm conviction that the trial court mistakenly denied the appellant's motion, we find that the trial court's ruling denying the Batson motion is "clearly erroneous."Fletcher v. State 703 So.2d 432 (Ala.Cr.App. 1997); Davis v.State, 555 So.2d 309, 312 (Ala.Crim.App. 1989).
We first note that the State gave several different reasons for using its first strike that removed veniremember number 3, a black male engineer, from the jury, and that this court found each of those to be pretextual. Not only did this render the State's first strike violative of the appellant's right to equal protection, where the State failed to articulate a legitimate reason for its first strike, its subsequent strikes, even those stating ordinary reasons, were exposed to greater scrutiny. Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991). The record reflects that the State struck veniremember Number 25, a black male, because he testified on voir dire that he sometimes watched "tabloid-type" television shows such as Ricki Lake. The strike of this veniremember was pretextual because at least two other veniremembers, one of whom was veniremember Number 13, K.G., a white female, were not struck for the same reason. Exparte Branch, 526 So.2d 609, 622-623 (Ala. 1987).
The record further shows that the State struck veniremember Number 39, a black male, because he failed to respond to questions which the prosecutor thought he should have responded to. The record does not disclose why the prosecutor believed that Number 39 should have responded to these questions, and the State did not ask this veniremember additional voir dire questions. Thus, the reason given by the State for this strike must also be considered pretextual.
The State struck veniremember Number 40 because he failed to say much on voir dire and because the prosecutor stated that he appeared as if he could not reach a decision or show emotion. The State failed to show that this veniremember failed to respond to any questions that applied to him, and the other reasons offered by the State amounted to little more than "gut feelings" on the part of the prosecutor. Ex parte Bird,594 So.2d 676, 684 (Ala. 1991) ("[u]narticulated 'gut feelings' about a veniremember will not rebut a Branch challenge.").
The State struck veniremember Number 19, a white male, for similar reasons. The prosecutor noted that this veniremember had been a juror in a previous case (some years ago) in which a policeman had been shot and in which the defendant had entered a guilty plea half-way through trial. The prosecutor said he thought Number 19 would not have any sympathy "toward listening to the victim's side in this opportunity (sic), and that he would base a decision on other than what the law was . . . rather than listening to the evidence." The only reason given by the prosecutor for such a statement was that it was a "personal thing." Ex parte Bird, 594 So.2d 676, 684 (Ala. 1991) ("[U]narticulated 'gut feelings' about a veniremember will not rebut a Branch challenge.").
Even one unconstitutional peremptory strike of a prospective juror requires reversal of a conviction and a new trial. Exparte Bird, 594 So.2d 676, 683 (Ala. 1991). The record of this case reflects that the State struck six veniremembers — fully half of a jury — on the basis of race or gender. Because this court finds that the trial court's ruling, which denied theBatson motion, is "clearly erroneous," the judgment and conviction of the appellant is reversed and this cause is remanded for a new trial. Fletcher v. State 703 So.2d 432
(Ala.Cr.App. 1997); *Page 230 Davis v. State, 555 So.2d 309, 312 (Ala.Cr.App. 1989).
REVERSED AND REMANDED.
All judges concur except LONG, P.J., and BROWN, J., concur in result only.
[1] The record does not state what period of probation, if any, that the trial court intended the appellant to serve.
* Note from reporter of decisions: On November 14, 1997, the Court of Criminal Appeals withdrew its opinion in Crews v.State and affirmed by an unpublished memorandum. The December 20, 1996, opinion will not be published.
[2] "In J.E.B. v. Alabama, 511 U.S. 127, 145, 114 S.Ct. 1419, 1430
[128 L.Ed.2d 89 (1994)],, the United States Supreme Court held that 'the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man.' " Woods v. State [Ms. CR-95-1797, April 18, 1997] ___ So.2d ___ at ___ (Ala.Cr.App. 1997).
[3] The record reflects that neither the trial court, the prosecutor, nor the defense attorney were certain as to the race of veniremember Number 3. Moreover, although the State attributes numerous characteristics to this veniremember, such as his educational background, in explaining the reasons for striking him, the only trait concerning veniremember Number 3 that appears in the record of this case is the fact that he had read about this case in the newspaper.
[4] See, record at 64.
[5] In response to the prosecutor's comment that this veniremember appeared like he would rather not be serving jury duty, the trial court immediately responded, "Well, that applies to all jurors."