1
 2024 CO 62 The People of the State of Colorado, Petitioner: v. Phillip Romero, Respondent: No. 22SC845
Supreme Court of Colorado, En Banc
September 9, 2024

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 20CA143

 Attorneys for Petitioner:

 Philip
 J. Weiser, Attorney General Patrick A. Withers, Senior
 Assistant Attorney General Denver, Colorado

 Attorneys for Respondent:

 Snow
 Criminal Defense, LLC Barbara A. Snow Longmont, Colorado

 JUSTICE SAMOUR delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE GABRIEL, JUSTICE HART, and JUSTICE BERKENKOTTER
 joined.

 OPINION

 SAMOUR, JUSTICE

 ¶1
 The clear error standard of review is highly deferential to
 trial courts, precluding second-guessing and making their
 rulings all the more consequential. The chief reason for such
 deference in appeals like this one is that trial courts are
 in a unique position to make firsthand observations related
 to demeanor and credibility. As one court colorfully put it,
 even a great transcript "is like a dehydrated peach; it
 has neither the substance nor the flavor of the fruit before
 it was dried. It resembles a pressed flower."
Broad. Music, Inc. v. Havana Madrid Rest.
 Corp., 175 F.2d 77, 80 (2d Cir. 1949) (footnote
 omitted).

 ¶2
 In this case, a division of the court of appeals correctly
 recognized that the clear error standard of review applied to
 the trial court's denial of the defendant's
 Batson challenge with respect to the
 prosecution's second peremptory strike during jury
 selection.[1] People v. Romero, 2022 COA 119,
 ¶ 6, 523 P.3d 1010, 1012.

But the division misapplied the clear error standard of
 review by failing to afford any deference to the trial
 court's ultimate ruling at step three of the
 Batson analysis.

 ¶3
 After properly acknowledging both that the trial court had
 implicitly found credible the prosecution's race-neutral
 reason for striking Prospective Juror F and that Colorado law
 does not require such a finding to be explicit, the division
 second-guessed the trial court's credibility
 determination. Relying on our decision in People v.
 Beauvais, 2017 CO 34, 393 P.3d 509, the division
 concluded that the trial court should not have believed the
 prosecution's race-neutral reason-that Prospective Juror
 F seemed very "disinterested,"[2] was not
 particularly focused, and appeared to have a wandering
 mind.[3] Romero, ¶ 18, 523 P.3d at
 1014.

According to the division, under Beauvais, the trial
 court's decision to credit the prosecutor's
 race-neutral reason was clear error because that reason was
 neither accompanied by a specific factual justification nor
 supported by objective evidence confirming that it was true
 or accurate. Id.

 ¶4
 The division misunderstood our decision in Beauvais.
Nowhere in Beauvais did we say that a trial court
 may credit a prosecutor's race-neutral reason for
 striking a prospective juror only if that reason is supported
 by the type of corroboration required by the division. What
 we said is that, to withstand clear error review at step
 three, the record both must reflect that the trial court
 considered all the relevant circumstances and must support
 (including possibly through implicit demeanor and credibility
 findings) the trial court's ultimate ruling
 regarding whether the objecting party has met the burden of
 showing purposeful racial discrimination. Beauvais,
¶¶ 32, 37, 393 P.3d at 519-20.

 ¶5
 Nor does Beauvais stand for the proposition that
 the prosecution bears the burden of proving that its
 race-neutral reason for excusing a prospective juror is true,
 accurate, or otherwise believable. At step three, the burden
 of proof rests with, and never shifts from, the objecting
 party-here, the defendant. Id. at ¶ 24,
 393 P.3d at 517. The objecting party must show by a
 preponderance of the evidence that the peremptory strike in
 question was motivated by purposeful racial discrimination.
Id.

 ¶6
 The division compounded its misapprehension of
 Beauvais by misconstruing the record. Contrary to
 the division's conclusion, the record is not
 devoid of support for the trial court's decision to
 credit the prosecutor's raceneutral reason. Rather, the
 record reflects that the trial court implicitly found the
 prosecutor credible and her race-neutral reason for excusing
 Prospective Juror F sincere.

 ¶7
The trial court at no point indicated, or even suggested,
 that it thought the prosecutor was being disingenuous or
 untruthful. Instead, having observed the prosecutor's
 demeanor firsthand and the promptness with which she uttered
 her race-neutral reason, and having considered all the other
 relevant circumstances along with the persuasiveness of the
 race-neutral reason in light of the rebuttal presented by the
 defense, the trial court necessarily concluded that the
 prosecutor had stated an appropriate basis for excusing
 Prospective Juror F.

 ¶8
 The division went a step further still and determined that a
 comment by the trial court actually undermined the
 prosecution's race-neutral reason for striking
 Prospective Juror F. Romero, ¶ 18, 523 P.3d at
 1014. We disagree. What the record shows is that the trial
 court simply acknowledged it had not been focused on
 Prospective Juror F's demeanor and was thus unable to
 independently say whether he was disinterested. This
 observation did nothing more than convey that the trial court
 could neither substantiate nor repudiate the
 prosecution's race-neutral

 reason. Such a remark cannot be fairly characterized as an
 "explicit finding[]" undermining the
 prosecution's reason for excusing Prospective Juror F.
 Id. at ¶ 25, 523 P.3d at 1015. Just the
 opposite: Despite candidly sharing with the parties that it
 had not been paying close attention to Prospective Juror
 F's demeanor, the trial court ultimately found believable
 that the prosecution had excused him because he appeared to
 be disinterested.

 ¶9
 It is uncontestable that the ultimate Batson ruling
 at step three, regarding whether the objecting party has
 shown purposeful racial discrimination, is a factual
 determination of the striking party's demeanor and
 credibility, which lies peculiarly within the trial
 court's province. It is equally axiomatic that such a
 determination deserves great deference on review because
 trial courts have access to the best (if not the only)
 evidence of the striking party's demeanor and
 credibility. Accordingly, appellate courts use clear error, a
 standard of review highly deferential to trial courts, to
 evaluate step-three Batson rulings, reversing only
 in exceptional circumstances.

 ¶10
 Here, the record both reflects that the trial court
 considered all the relevant circumstances and supports the
 ultimate Batson ruling at step three. Therefore, the
 trial court did not clearly err.

 ¶11
 Although intending to review for clear error, the division
 essentially conducted a de novo review, second-guessing the
 ultimate Batson ruling. Putting

 itself in the trial court's shoes, it performed its own
 credibility assessment of the prosecution's race-neutral
 reason. Because the division's analysis does not conform
 with the clear error standard of review and cannot be squared
 with the record, we reverse the judgment.

 I.
Facts and Procedural History

 A.
Background

 ¶12
The defendant, Phillip Romero, threatened and attacked his
 romantic partner. The prosecution subsequently charged him
 with assault in the first degree, assault in the second
 degree, menacing, and false imprisonment. A jury returned
 guilty verdicts on all four charges, and the trial court then
 adjudicated him a habitual criminal and sentenced him to
 prison.

 ¶13
 On appeal, Romero argued, as pertinent here, that the trial
 court had clearly erred in denying his Batson
 challenge, which he raised when the prosecution used a
 peremptory strike to excuse Prospective Juror F, one of two
 Hispanics in the jury pool. A division of the court of
 appeals agreed, reversed the judgment of conviction, and
 remanded for a new trial without addressing any other issues
 raised by Romero. Romero, ¶¶ 27-28, 523
 P.3d at 1016. Thereafter, we granted the
 prosecution's petition for certiorari, which contained a
 single issue:

Whether the court of appeals erroneously heightened the clear
 error standard of review in violation of this court's
 precedent, which mandates reversal of a trial court's
 factual findings only when they are so clearly erroneous as
 to find no support in the record.

 Accordingly,
 we cabin our discussion to the division's conclusion that
 the trial court clearly erred by denying Romero's
 Batson challenge.

 B.
 Batson Challenge

 ¶14
 At the end of jury selection, the trial court held a bench
 conference to allow the prosecution and the defense to
 exercise their peremptory strikes outside the presence of the
 prospective jurors. The prosecution used its second
 peremptory strike to excuse Prospective Juror F. When the
 parties had exercised all of their peremptory strikes, the
 defense timely raised a Batson challenge, objecting
 to the prosecution's second peremptory strike as
 race-based. Defense counsel noted that Prospective Juror F
 was Hispanic and had said little during jury
 selection:[4]

I would raise Batson at this point in time. I would
 note that [Prospective Juror F] is a minority and part of a
 protected class. I don't remember him saying much of
 anything except that [domestic violence] exists. So we're
 raising that.

 ¶15
 Before the trial court could address whether the defense had
 made a prima facie showing of racial discrimination (and thus
 whether to proceed to step two of the analysis), the
 prosecutor immediately responded by explaining that she had
 stricken Prospective Juror F for a race-neutral reason:

So, Your Honor, our reason for striking [Prospective Juror F]
 was due to the fact that he appeared very disinterested and
 kind of had seemed to have a wandering mind at times when the
 [c]ourt was reading instructions or going over concepts, ....
[W]hen we were asking questions of everyone, he just
 didn't seem particularly focused or interested in what
 was going on.

 As an
 aside, the prosecutor added that, right after she used her
 second peremptory strike to excuse Prospective Juror F,
 defense counsel used his second peremptory strike to excuse
 "the only other protected-class individual" in the
 jury pool, who was also Hispanic.

 ¶16
 Defense counsel asked the trial court if he could respond to
 the reason articulated by the prosecutor. The court obliged,
 inadvertently bumping the analysis to step three without
 first determining whether the prosecutor's reason was
 race-neutral.[5] In rebuttal, defense counsel protested
 that nobody had

 previously expressed concern over Prospective Juror F's
 lack of attentiveness. Beyond that, defense counsel remarked
 that he himself hadn't noticed that Prospective Juror F
 was "falling asleep or not paying attention."

 ¶17
 In addressing the defense's Batson challenge,
 the trial court started by pointing out that there were two
 non-white prospective jurors in the pool, both Hispanic, and
 that each party had excused one of them with the second
 peremptory strike. Then, zeroing in on Prospective Juror F,
 the court acknowledged that it had not taken any notes during
 either counsel's examination of that prospective juror
 because nothing he said had raised red flags. Elaborating,
 the court explained that Prospective Juror F had not made any
 comment that "could, ultimately, be the basis for a
 challenge for cause." Instead, stated the court,
 whatever statements Prospective Juror F had made "were
 simply unremarkable." But the court hastened to add that
 the prosecution was not striking Prospective Juror F based
 "upon statements that he made; rather, they [were]
 basing it on their read of his body language, that he seemed
 to be disinterested."

 ¶18
 Following those preliminary remarks, the trial court
 proceeded to apply Batson's three-step
 framework. First, the court found that, at step one, the
 defense had failed to make "a prima facie case [that]
the prosecutor struck a prospective

 juror on the basis of race." But the court didn't
 end its analysis there. It went on to address step two in
 case an appellate court later held that the defense had made
 the requisite showing at step one. Regarding step two, the
 court found that the prosecution had proffered "a
 race-neutral reason for excusing [Prospective Juror F]."
Thus, the court continued to step three.

 ¶19
 At step three, the trial court discussed the difficulty of
 judging the prosecutor's race-neutral reason, adding that
 it could neither validate nor disavow that reason:

It's one of those reasons that's hard to make an
 analysis on . . . because it's based on nothing more than
 perception of whether or not somebody appears to be
 interested or not interested, and that's a very
 subjective kind of thing. I'll just simply say I have not
 seen [Prospective Juror F] seem obviously disinterested. This
 isn't a situation where the person has fallen asleep or
 has been focused on a different part of the courtroom that
 had nothing to do with the trial. I just didn't see
 anything from [Prospective Juror F] that suggests that he was
 not adequately participating in the trial.

 Having
 said that, the court was unpersuaded by the defense's
 contention that the prosecutor's race-neutral reason
 should not be believed because nobody had previously raised
 any concern regarding Prospective Juror F's
 attentiveness:

That kind of observation that somebody seems disinterested is
 not the kind of thing that would need to be brought to the
 [c]ourt's attention unless they were actually sleeping
 during the proceedings. So that's something that the
 prosecution or the defense could simply note in their notes
 and . . . then use that later when it came to a preemptory
 [sic].

So I don't . . . find that to be the kind of thing that
 needs to be raised and then brought to the [c]ourt's
 attention.... [I]t's really [a] subjective kind of
 observation that could be the basis for a valid preemptory
 [sic] challenge.

 ¶20
The trial court wrapped up its analysis by impliedly, but
 necessarily, crediting the prosecutor's race-neutral
 reason and concluding that Romero had failed to meet his
 burden of showing purposeful racial discrimination by a
 preponderance of the evidence. It thus denied the
 Batson challenge and released Prospective Juror F.

 ¶21
 On appeal, Romero argued, among other things, that the trial
 court had clearly erred in denying his Batson
 challenge. In a split, published opinion, the division
 agreed, reversed his conviction on that ground, and remanded
 for a new trial.[6] Romero, ¶¶ 27-28, 523
 P.3d at 1016.

 ¶22
 The division acknowledged both that the trial court had
 implicitly found credible the prosecutor's articulated
 reason for excusing Prospective Juror F and that Colorado law
 does not require that such a finding be explicit.
Id. at ¶ 17, 523 P.3d at 1014. But it concluded
 that the trial court shouldn't have believed the
 prosecution's race-neutral reason because, in the
 division's view, (1) that reason had no support in the
 record-i.e., there was neither a factual basis justifying it
 (such as "identification of the actual observed behavior
 on which it was based")

 nor any objective evidence confirming its veracity or
 accuracy; and (2) the record tended to undermine the
 credibility of the prosecution's assertion that
 Prospective Juror F appeared disinterested. Id. at
 ¶¶ 18, 21, 523 P.3d at 1014-15. With respect to the
 latter point, the division specified that (1) defense counsel
 commented during the Batson colloquy that he had
 observed no behavior by Prospective Juror F indicative of
 being disinterested, and (2) the trial court thereafter made
 an "explicit finding[]" that it hadn't noticed
 Prospective Juror F acting disinterested. Id. at
 ¶ 25, 523 P.3d at 1015. According to the division, in
 light of these circumstances, the trial court's
 step-three ruling constituted clear error under
 Beauvais. Id. at ¶ 26, 523 P.3d at
 1015-16.

 ¶23
Judge Richman dissented. He disagreed that (1) the
 prosecution needed to articulate a specific factual basis
 justifying its race-neutral reason, and (2) the record needed
 to contain objective evidence confirming the veracity or
 accuracy of that reason. Id. at ¶ 33, 523 P.3d
 at 1016-17 (Richman, J., dissenting). Judge Richman opined
 that "it is not incumbent that the record contain
 evidence affirmatively supporting the prosecutor's
 demeanor-based reasons for striking a prospective juror;
 rather, the issue is whether the record refutes the
 reasons offered by the prosecution." Id. at
 ¶ 37, 523 P.3d at 1017. And because he concluded that
 the record in this case did not refute the prosecution's
 demeanor-based reason for

 excusing Prospective Juror F, he would have upheld the trial
 court's step-three ruling. Id. at ¶ 43, 523
 P.3d at 1018.

 ¶24
The prosecution now contends that the division erred in
 holding that the trial court's step-three ruling was
 clearly erroneous. Romero counters that the division was
 spot-on. Before we get to our analysis, we pause just long
 enough to address a preliminary matter that took up an
 appreciable amount of time during oral arguments-why we
 continue to adhere to Batson despite its innate
 flaws, the difficulties inherent in its application, and the
 criticisms that have rained down on it over the years.

 II.
Batson Continues to Rule the Roost
 in Colorado

 ¶25
 Perhaps tellingly, during her oral argument, Romero's
 appellate counsel didn't focus on defending the
 division's analysis as Batson-compliant. On the
 contrary, counsel spent a fair amount of time touting the
 division's approach as more effective than
 Batson in cases involving a demeanor-based step-two
 reason. In other words, acknowledging that there is some
 daylight between the division's framework and
 Batson's, defense counsel urged us to choose the
 former over the latter to smoke out purposeful racial
 discrimination from jury selection in cases like this one. To
 be sure, we sympathize with counsel's concerns regarding
 Batson; as some of the questions we propounded
 reflect, we are keenly aware of the

 frustrations that are part and parcel of its methodology.
Still, we are bound by, and thus cannot sidestep,
 Batson.

 ¶26
 While animated by laudable intentions of unassailable
 importance, this landmark decision has been difficult and
 unwieldy to apply both at trial and on review. Today's
 case is one more example of the challenges Batson
 presents for trial courts and appellate courts alike.

 ¶27
 Given its ambitious (and perhaps unrealistic) goal, it is
 unsurprising that Batson came under siege from the moment of
 its inception. See Batson v. Kentucky, 476 U.S. 79,
 102-03 (1986) (Marshall, J., concurring) (predicting that the
 decision, while a “historic step toward eliminating the
 shameful practice of racial discrimination in the selection
 of juries,” would “not end” that practice,
 and opining that the goal “can be accomplished only by
 eliminating peremptory challenges entirely”). For the
 same reason, it is just as unsurprising that Batson has
 continued to stand in the line of fire for nearly forty
 years, as an ever-growing chorus of courts and commentators
 have exposed its troublesome flaws and validated Justice
 Marshall's dire prognostication that it would prove
 ineffective. See, e.g., Miller-El v. Dretke, 545
 U.S. 231, 266-67 (2005) (“Miller-El II”)
(Breyer, J., concurring) (“The only way to ‘end
 the racial discrimination that peremptories inject into the
 jury-selection process' . . . [is] to ‘eliminat[e]
 peremptory challenges entirely.'” (second
 alteration in original) (quoting Batson, 476 U.S. at
 102-03

(Marshall, J., concurring))); People v. Johnson,
 2024 CO 35, ¶¶ 64-74, 88, 549 P.3d 985, 998-1000,
 1003 (Marquez, J., specially concurring) (discussing in
 detail Batson's serious flaws, and observing
 that "[n]early forty years later, it appears Justice
 Marshall was correct" in predicting Batson
 would not end racial discrimination in jury selection);
see also generally Morris B. Hoffman, Peremptory
 Challenges Should Be Abolished: A Trial Judge's
 Perspective, 64 U. Chi. L. Rev. 809 (1997) (noting
Batson's shortfalls and calling for the
 abrogation of peremptory challenges).

 ¶28
 Of course, states are free to extinguish peremptory strikes
 and thereby render Batson obsolete "without
 impairing the constitutional guarantee of an impartial jury
 and a fair trial." Rivera v. Illinois, 556 U.S.
 148, 152 (2009) (quoting Georgia v. McCollum, 505
 U.S. 42, 57 (1992)). In Arizona, for example, the state
 supreme court recently put Batson out of commission
 by abolishing peremptory strikes altogether-no peremptory
 strikes, no racial discrimination through such strikes, and
 no need for Batson. Sup. Ct. of Ariz. No. R-21-0020,
 Order Amending Rules 18.4 and 18.5 of the Rules of Criminal
 Procedure, and Rule 47(e) of the Rules of Civil Procedure
(Aug. 30, 2021), https://aboutblaw.com/Zps
 [https://perma.cc/742M-J6DN].

 ¶29
 The no-peremptories model loomed at oral arguments in this
 case. Defense counsel posited that if we declined to endorse
 the division's methodology, the best

 course of action would be to eradicate peremptory challenges
 once and for all. Advocating for a jury system without
 peremptories is not out of left field. In Miller-El
 II, Justice Breyer noted in his concurring opinion that
 such an arrangement was already receiving serious
 consideration in some quarters of the legal profession-that
 was almost twenty years ago. 545 U.S. at 272 (Breyer, J.,
 concurring). And just a few weeks after oral arguments in the
 instant matter, some members of our court suggested that the
 time may be ripe for Colorado to follow Arizona's lead
 and put Batson out to pasture by vanishing
 peremptory strikes. Johnson, ¶¶ 64-74, 88,
 549 P.3d at 998-1000, 1003 (Marquez, J., specially
 concurring). In Colorado, however, that decision
 lies squarely with our state legislature because peremptory
 strikes are provided by statute, not court rule (as was the
 case in Arizona). § 16-10-104, C.R.S.
(2023).[7]

 ¶30
 And, as long as our legislature continues to require that
 peremptory strikes be available-a policy decision that is its
 prerogative-we must continue applying Batson,
 regardless of whether its controversial framework is an
 effective colander to strain peremptory strikes for
 purposeful racial discrimination in jury selection.
Johnson, ¶¶ 14, 17, 549 P.3d at 990
(acknowledging that some parties continue to use peremptory
 strikes "to cloak purposeful discrimination," but
 stating that we

 must still "adhere to the Supreme Court's three-step
 framework in Batson to reconcile peremptory strikes
 and the Equal Protection Clause."). So, we apply
 Batson once more.

 III.
Analysis

 ¶31
 At the outset, we note that the trial court's
 determination that Romero failed to make the requisite prima
 facie showing at Batson's step one is not before
 us. Because the trial court ruled on the ultimate issue of
 purposeful racial discrimination at step three, that
 "preliminary issue . . . bec[ame] moot."
Hernandez v. New York, 500 U.S. 352, 359 (1991)
(plurality opinion); see also People v. Wilson, 2015
 CO 54M, ¶ 12, 351 P.3d 1126, 1131 (stating that the
 step-one question was mooted by the trial court's ruling
 on the ultimate Batson issue). Nor is
 Batson's step two before us-Romero concedes that
 the prosecution offered a race-neutral reason for striking
 Prospective Juror F. But while our focus is on
 Batson's step three, we believe it is helpful to
 briefly discuss steps one and two for context.

 ¶32
 After donning our analytical fins and goggles, we snorkel
 over the first two steps before taking a deep dive into the
 third. Following our in-depth exploration of step three, we
 consider the controlling standard of review at that
 step-clear error-and describe how its highly deferential
 nature makes it so well-suited to review a trial court's
 ultimate Batson ruling. Against this backdrop, we
 examine what led the division astray-its understanding of our
 decision in Beauvais and its

 construction of the record. And, having corrected the
 division's missteps, we end by concluding that the trial
 court did not commit clear error in denying Romero's
 Batson challenge and excusing Prospective Juror F.

 A.
 Batson's Steps One and Two

 ¶33
 The step-one standard to determine whether an objecting party
 has satisfied the burden of making a prima facie showing that
 the challenged peremptory strike is race-based is
 "easily satisfied." Craig v. Carlson, 161
 P.3d 648, 655 (Colo. 2007); see also Valdez v.
 People, 966 P.2d 587, 590 (Colo. 1998) (characterizing
 the standard as "not a high one"). It suffices that
 the totality of the circumstances gives rise to an inference
 of racial motivation. People v. Rodriguez, 2015 CO
 55, ¶ 10, 351 P.3d 423, 428-29.

 ¶34
 If the objecting party meets the burden at step one, then at
 step two the burden shifts to the striking party to offer a
 race-neutral reason for the strike. Johnson, ¶
 19, 549 P.3d at 991. The striking party's reason
 "need not rise to the level justifying exercise of a
 challenge for cause." Batson, 476 U.S. at 97.
Rather, a raceneutral reason simply means what it says: a
 reason that's based on something other than the race of
 the prospective juror. Johnson, ¶ 19, 549 P.3d
 at 991.

 ¶35
 Importantly, the trial court may not consider the
 plausibility or persuasiveness of a stated reason at step
 two. Id. No, at this step, the court is limited to
 determining whether the striking party has advanced a reason
 that, "on

 its face," is race neutral. People v. Austin,
 2024 CO 36, ¶ 18, 549 P.3d 977, 983. This is a
 "low" burden for the striking party to meet.
Johnson, ¶ 46, 549 P.3d at 995. The question
 simply is "whether, assuming the proffered reason for
 the peremptory challenge is true, the challenge is based on
 something other than race or whether it is race-based."
People v. Ojeda, 2022 CO 7, ¶ 26, 503 P.3d 856,
 863. "Unless a discriminatory intent is inherent in the
 prosecutor's explanation, the reason offered [at step
 two] will be deemed race neutral." Hernandez,
 500 U.S. at 360. Courts must be mindful not to fall into the
 trap of blending this step with step three. Johnson,
 ¶ 45, 549 P.3d at 995.

 B.
 In-Depth Inspection of Batson's Step
 Three

 ¶36
 In the event the striking party proffers a race-neutral
 reason at step two, the analysis moves to step three. At this
 final step, the objecting party may present evidence or
 argument to rebut the striking party's stated reason for
 excusing the prospective juror in question. People v.
 Madrid, 2023 CO 12, ¶ 34, 526 P.3d 185, 193. The
 trial court must then consider the "persuasiveness"
 of the striking party's reason for the peremptory strike
 in light of any rebuttal offered. Miller-El v. Cockrell,
 537 U.S. 322, 338-39 (2003) ("Miller-El
 I").

 ¶37
 Further, as the court scrutinizes the race-neutral reason
 advanced, it must ponder all of the relevant circumstances
 "'that bear upon the issue of' purposeful
 discrimination." Madrid, ¶ 34, 526 P.3d at
 193 (quoting Beauvais, ¶ 23, 393 P.3d at 517).

The relevant circumstances include, but are not limited to,
 "the striking party's demeanor, the reasonableness
 of the proffered race-neutral explanation, . . . whether the
 rationales [advanced] are rooted in accepted trial
 strategy," Id., 526 P.3d at 193-94, and
 "the plausibility of the striking party's
 non-discriminatory explanations," Beauvais,
 ¶ 23, 393 P.3d at 517.

 ¶38
 Notably, although the trial court must evaluate all of the
 relevant circumstances, "the ultimate burden of
 persuasion regarding racial motivation rests with, and never
 shifts from, the opponent of the strike."
Wilson, ¶ 14, 351 P.3d at 1132 (quoting
Purkett v. Elem, 514 U.S. 765, 768 (1995)). This is
 fair; after all, the opponent of the strike is the party
 alleging purposeful racial discrimination. Batson,
 476 U.S. at 93.

 ¶39
The trial court must ultimately decide whether the objecting
 party has shown purposeful racial discrimination by a
 preponderance of the evidence. Beauvais, ¶ 21,
 393 P.3d at 516. Resolution of this question requires trial
 courts to apply "a substantial-motivating-factor test;
 that is, if the court determines that a peremptory strike was
 'motivated in substantial part by discriminatory
 intent,' the court may conclude that the strike was
 purposefully discriminatory under Batson."
Madrid, ¶ 35, 526 P.3d at 194 (quoting
Flowers v. Mississippi, 588 U.S. 284, 303 (2019)).

 ¶40
"[A] trial court should sustain a Batson
 objection only if the objecting party proves by a
 preponderance of the evidence that the striking party's
 non-discriminatory reasons are sufficiently incredible that
 the "'discriminatory hypothesis' better fits the
 evidence."" Beauvais, ¶ 24, 393 P.3d
 at 517 (quoting Wilson, ¶ 14, 351 P.3d at
 1132). An "implausible or fantastic" explanation
 for the strike should probably be found to be a pretext for
 purposeful racial discrimination. Elem, 514 U.S. at
 768.

 ¶41
"In the typical peremptory challenge inquiry, the
 decisive question will be whether counsel's race-neutral
 explanation for a peremptory challenge should be
 believed." Hernandez, 500 U.S. at 365. The
 problem is that there is "seldom . . . much evidence
 bearing on that issue." Id. Moreover, the
 credibility of a raceneutral reason is intrinsically
 difficult to assess because the exercise of peremptory
 strikes is often a matter of instinct, and even articulating
 the reason for a strike can be difficult. See Miller-El
 II, 545 U.S. at 252. As Justice O'Connor recognized,
 "often a reason for [striking a prospective juror]
 cannot be stated, for a trial lawyer's judgments about a
 [prospective] juror's sympathies are sometimes based on
 experienced hunches and educated guesses ...."
J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 148
(1994) (O'Connor, J., concurring).

 ¶42
 The demeanor and credibility of the attorney exercising the
 peremptory strike frequently constitute the best evidence of
 whether the objecting party has

 established purposeful racial discrimination.
Beauvais, ¶ 23, 393 P.3d at 517 (citing
Snyder v. Louisiana, 552 U.S. 472, 477 (2008)).
Indeed, the ruling at step three, regarding whether the
 objecting party has met the burden of establishing purposeful
 racial discrimination, is at its core a "determination[]
 of credibility and demeanor." Id. at ¶ 21,
 393 P.3d at 516 (alteration in original) (quoting
Snyder, 552 U.S. at 477). And this determination
 lies "peculiarly within a trial judge's
 province." Id. (quoting Snyder, 552
 U.S. at 477). That's because a trial judge is in the best
 position to evaluate the striking party's demeanor and
 credibility, as well as the credibility of the race-neutral
 explanation articulated. Id. at ¶ 25, 393 P.3d
 at 517. And when the striking party's race-neutral
 explanation is predicated on the demeanor of a prospective
 juror, the trial judge is also best suited to assess that
 demeanor. Id. As we noted in Beauvais, the
 Supreme Court "has long recognized that trial courts are
 uniquely positioned" to judge the demeanor and
 credibility of both the attorney exercising the peremptory
 strike in question and the challenged prospective juror.
Id. at ¶ 31, 393 P.3d at 519.

 ¶43
We echo what we said in Beauvais: The preferred
 practice is to have trial courts make express
 demeanor and credibility findings. Id. at ¶ 29,
 393 P.3d at 518. Such findings are extremely helpful on
 appellate review. Id. Still, the Supreme Court has
 never required express demeanor and credibility findings.
Id. (citing Thaler v. Haynes, 559 U.S. 43,
 48 (2010) (per curiam) and Miller-El I, 537 U.S. at
 347).

Nor have we. Id. Hence, while not ideal, implicit
 demeanor and credibility findings may suffice. Id.

 ¶44
 Inasmuch as a step-three ruling is a determination of
 demeanor and credibility, appellate courts understandably
 afford such rulings great deference and reverse only under
 "exceptional circumstances." Id. at ¶
 25, 393 P.3d at 517 (quoting Snyder, 552 U.S. at
 477). This level of deference reflects that trial courts can
 best discern "the presence or absence of discriminatory
 intent" at step three. Id. at ¶ 25, 393
 P.3d at 517 (quoting Wilson, ¶ 23, 351 P.3d at
 1134). It follows that an appellate court is precluded
 "from substituting its reading of a cold record for the
 trial court's in-the-moment and better-informed
 determination." Id. at ¶ 31, 393 P.3d at
 519.

 C.
Standard of Review for the Ultimate Batson
Ruling at Step Three: Clear Error

 ¶45
We review de novo a trial court's determinations at step
 one (regarding whether the objecting party made a prima facie
 showing that the challenged peremptory strike was race-based)
 and at step two (regarding whether the striking party gave a
 race-neutral reason for the strike). Johnson, ¶
 21, 549 P.3d at 991. But at step three, we review a trial
 court's ultimate conclusion, regarding "'whether
 the objecting party proved purposeful discrimination by a
 preponderance of the evidence,' for clear error."
Id. (quoting Beauvais, ¶ 2, 393 P.3d
 at 512).

 ¶46
 So, why use clear error review instead of de novo review at
 step three? Because "[f]orm follows function,"
 meaning that the governing standard of review hinges on the
 function to be served. Cf. Castro v. People, 2024 CO
 56, ¶ 65, 550 P.3d 1124, 1137 (making a similar
 observation with respect to the standard of reversal). The
 standard of review at step three must be capable of
 accommodating the deference due a trial court's findings
 related to demeanor and credibility. The clear error standard
 of review fits a step-three ruling to a T.

 ¶47
 Whether the objecting party has met the burden of proof at
 step three is a finding of fact, Beauvais, ¶
 32, 393 P.3d at 519, and "factual findings will not be
 disturbed on appeal unless they are clearly erroneous,"
City of Aspen v. Burlingame Ranch II Condo. Owners
 Ass'n, 2024 CO 46, ¶ 23, 551 P.3d 655, 661.
Under the clear error standard of review, an appellate court
 will set aside a trial court's findings of fact only if
 they are unsupported by the record. Martinez v.
 People, 2024 CO 6M, ¶ 34, 542 P.3d 675, 683;
People v. Platt, 81 P.3d 1060, 1065 (Colo. 2004).
This is precisely why we cautioned in Beauvais that
 a step-three ruling as to "[w]hether the challenging
 party has met its burden of proof . . . must find support in
 the record to survive clear error review." ¶ 32,
 393 P.3d at 519. But such record support, while required,
 isn't sufficient. The record must also show that the
 ruling was made after the trial court considered all the
 relevant circumstances. Id. In short, then,
 appellate courts conducting clear error review of a
 step-three Batson

 ruling should give deference to that ruling so long as the
 record (1) reflects that the trial court considered all the
 relevant circumstances and (2) supports (including possibly
 through implicit demeanor and credibility findings) the trial
 court's ruling as to whether the objecting party proved
 purposeful racial discrimination by a preponderance of the
 evidence. Id.

 D.
Where the Division Erred

 ¶48
 The division faltered in two respects. First, it
 misunderstood our opinion in Beauvais. Second, it
 misconstrued the record. We take up each in turn as we course
 correct.

 1.
The Division's Understanding of
 Beauvais

 ¶49
 Relying on Beauvais, the division declared that the
 absence "of anything in the record supporting the
 credibility of a prosecutor's subjective step-two reason
 . . . renders the trial court's decision to credit it [at
 step three] clear error." Romero, ¶ 19,
 523 P.3d at 1014 (emphasis omitted). But Beauvais
 does not support this proposition.

 ¶50
 The passage from Beauvais on which the division
 leaned simply establishes that "the central inquiry
 under a clear error review" of a Batson ruling
 is "whether that ruling is without support in the
 record." Beauvais, ¶ 32, 393 P.3d at 519.
We do not read this statement as requiring the type of
 corroboration demanded by the

 division. As we've underscored, the record support
 required for a step-three ruling may be in the form of
 implicit demeanor and credibility findings.

 ¶51
 The division acknowledged that Beauvais teaches that
 implicit demeanor and credibility findings may suffice at
 step three, but it perceived that this lesson was in tension
 with a different lesson from that opinion-namely, that a
 step-three ruling must be supported by the record.
Romero, ¶ 20, 523 P.3d at 1014-15. "[If
 there are no explicit findings and nothing in the record
 either supports or refutes the trial court's decision . .
 . to credit a step-two reason," asked the division,
 "what is a reviewing court to do?" Id.,
 523 P.3d at 1014. The division's concern, while
 understandable, stemmed from equating a record that contains
 "no explicit findings" supporting or refuting a
 step-three ruling with a record that contains
 "nothing" supporting or refuting a step-three
 ruling. Id. Those two records, however, are not
 birds of a feather.

 ¶52
 There is a difference between a record lacking express,
 but containing implicit, demeanor and credibility
 findings and one completely devoid of demeanor and
 credibility findings (express or implicit). Take this case,
 for instance. The trial court made no express demeanor and
 credibility findings. Yet, as we chronicle later, a review of
 the transcript of the discussion surrounding Romero's
 Batson challenge leaves zero doubt that the trial
 court implicitly found the prosecutor credible and her
 race-neutral reason sincere. Indeed, that the court made
 these

 implicit findings is not disputed by the parties and was
 acknowledged by the division. Id. at ¶ 14, 523
 P.3d at 1013. Thus, the fact that implicit findings, by
 definition, won't be expressly stated in the record
 doesn't necessarily mean that they can't be evaluated
 on review to determine whether they support a trial
 court's decision to credit the prosecutor's
 race-neutral reason.[8]

 ¶53
 Based on its reading of Beauvais, the division
 faulted the trial court for crediting the prosecutor's
 race-neutral reason, observing that it was a "subjective
 impression" of Prospective Juror F and that it was
 unaccompanied by a factual basis justifying it, such as
 "identification of the actual observed behavior on which
 it was based." Id. at ¶ 18, 523 P.3d at
 1014. And, added the division, no objective evidence in the
 record confirmed that the prosecutor's race-neutral
 reason was true or accurate. Id. Consequently, the
 division concluded that the trial court's

 decision to credit the prosecutor's race-neutral reason
 could not survive clear error review. Id. According
 to the division, "an unexplained and otherwise
 unsupported subjective impression" of a prospective
 juror is enough to survive step two, but it can never suffice
 to survive step three. Id. As the division
 apparently saw it, regardless of any rebuttal an objecting
 party comes forward with at step three, that party will have
 met the burden of showing purposeful racial discrimination if
 the striking party's race-neutral reason is not
 accompanied by a factual basis and supported by objective
 evidence. Id. at ¶¶ 16-17, 523 P.3d at
 1014. We disagree with the division's analysis because
 the trial court made implicit demeanor and credibility
 findings in support of the decision to credit the
 prosecutor's race-neutral reason.

 ¶54
 Thus, rather than ask whether there was affirmative
 corroboration in the record for the prosecutor's
 race-neutral reason, the division should have asked whether
 there was affirmative evidence in the record
 refuting that reason. Beauvais, ¶ 44,
 393 P.3d at 521-22. As Judge Richman rightly stated in his
 dissent, in this case, the issue is not whether there is
 "evidence affirmatively supporting the prosecutor's
 demeanor-based reasons"; it's "whether the
 record refutes the reasons offered by the
 prosecutor." Romero, ¶ 37, 523 P.3d at
 1017 (Richman, J., dissenting). ¶55 By holding the
 prosecutor responsible for the absence of affirmative
 corroboration in the record supporting her race-neutral
 reason, the division for all

 intents and purposes flipped the step-three burden. The
 division seemed to require the prosecutor to come
 forward with both a factual basis justifying her raceneutral
 reason and objective proof confirming the veracity or
 accuracy of that reason. Romero, ¶ 25, 523 P.3d
 at 1015 ("[I]n our case, the prosecutor did not
 identify, and the record does not otherwise indicate what
 [Prospective] Juror F did that caused the prosecutor to
 subjectively believe he was inattentive."); see
id. ("[O]ur review of the record, including
 [Prospective] Juror F's answer to the only question he
 was asked during voir dire, reveals nothing suggesting that
 [Prospective] Juror F was inattentive or
 disinterested."). As we explained last term in
 Johnson, however, "the question at step
 three" in a criminal case in which the defendant makes a
 Batson challenge is whether the defendant,
 as the party bearing the burden of proof, has established by
 a preponderance of the evidence "that the
 prosecutor engaged in purposeful discrimination, not
 whether the prosecutor proved" that the
 race-neutral reason advanced is true. Johnson,
 ¶ 55, 549 P.3d at 997 (second emphasis added)
(explaining that the prosecutor didn't have to prove that
 it was true that the prospective juror in question
 "harbored bias against law enforcement").

 ¶56
The Supreme Court has never required that a prosecutor's
 race-neutral reason be affirmatively corroborated by a
 factual basis or objective evidence. To the contrary, on more
 than one occasion, the Supreme Court has recognized that

the prosecutor's demeanor and credibility constitute the
 "best evidence" of whether a race-neutral reason
 should be believed. Snyder, 552 U.S. at 477;
Hernandez, 500 U.S. at 365.

 ¶57
 Like the Supreme Court, we haven't required the type of
 corroboration the division seemed to think was necessary. In
 Beauvais, we quoted Snyder for the
 proposition that "the best evidence [of discriminatory
 intent] often will be the demeanor of the attorney who
 exercises the challenge." Beauvais, ¶ 23,
 393 P.3d at 517 (alteration in original) (quoting
Snyder, 552 U.S. at 477). Continuing, we pointed out
 that the Supreme Court has acknowledged that "the trial
 court may not-and need not-have observed the [prospective
 juror's] complained-of demeanor." Id. at
 ¶ 41, 393 P.3d at 521. In such a situation, the trial
 court may have nothing but the prosecutor's demeanor and
 credibility to consider in deciding whether to credit the
 proffered reason for the strike in question. Id. at
 ¶ 23, 393 P.3d at 517.

 ¶58
 But doesn't this mean that a prosecutor's subjective
 impression of a prospective juror's demeanor, alone, will
 always suffice to overcome a Batson
 challenge? The division said it read Beauvais as it
 did because it feared that otherwise the answer to this
 question would be yes. Id. at ¶ 18, 523 P.3d at
 1014. Fair enough. But the answer to the division's
 question is no, even reading Beauvais as we do.

 ¶59
 Remember that at step three, the objecting party has an
 opportunity to present evidence or argument to rebut the
 striking party's race-neutral reason for excusing the
 prospective juror in question. Madrid, ¶ 34,
 526 P.3d at 193. The trial court must then consider the
 persuasiveness, if any, of the striking party's
 raceneutral reason in light of any rebuttal offered.
Miller-El 1, 537 U.S. at 338-39. And the court must
 consider all the circumstances that bear upon the issue of
 purposeful racial discrimination, including the striking
 attorney's demeanor, the reasonableness of the proffered
 race-neutral explanation, whether the rationale put forth is
 moored to sensible trial strategy, and the plausibility of
 any non-discriminatory explanation provided. Madrid,
 ¶ 34, 526 P.3d at 193; Beauvais, ¶ 23, 393
 P.3d at 517. Evidence refuting the prosecution's
 race-neutral reason would certainly militate against the
 trial court's crediting that reason.

 ¶60
 In the final Batson analysis, the trial court is
 under no obligation to credit the prosecutor's reason for
 excusing a prospective juror with a peremptory strike. And in
 a typical Batson-challenge inquiry in which the
 court finds that the raceneutral reason put forth is not
 credible-i.e., that it is a pretext for discrimination- the
 court should hold that the objecting party has met
 the burden of showing purposeful racial discrimination by a
 preponderance of the evidence. Hernandez, 500 U.S.
 at 365.

 ¶61
 In short, we conclude that the division misapprehended our
 decision in Beauvais. And, as we discuss next, the
 division exacerbated that miscue by misconstruing the record.

 2.
The Division's Construction of the Record

 ¶62
 In evaluating the step-three ruling on Romero's
 Batson challenge, the division determined that there
 was "nothing in the record supporting the trial
 court's decision to credit the prosecution's step-two
 reason." Romero, ¶ 21, 523 P.3d at 1015.
In our view, however, the record tells a different story. As
 in Beauvais, the trial court at no point stated, or
 even hinted, that it thought the prosecutor was being
 disingenuous or untruthful. See Beauvais, ¶ 44,
 393 P.3d at 521-22. Rather, much like we stated in
 Wilson, "[h]aving observed the prosecutor's
 demeanor firsthand" and the promptness with which she
 uttered her race-neutral reason, and having considered all
 the other relevant circumstances along with the
 persuasiveness of the race-neutral reason in light of the
 rebuttal presented by the defense, "the trial court
[necessarily] concluded that she [had] stated 'an
 appropriate basis' for excusing [the prospective
 juror]." ¶ 23, 351 P.3d at 1134. "The court
 thus implicitly found that the prosecutor was credible and
 that her race-neutral explanation . . . was sincere."
Id.; see also Beauvais, ¶ 32, 393 P.3d
 at 519 (clarifying that, at step three, a trial court
"need not make express findings" about the evidence
 or "how it contributes to the court's ultimate
 ruling").

 ¶63
 But the division didn't merely perceive the record as
 barren of evidence supporting the trial court's decision
 to credit the prosecutor's race-neutral reason. It went a
 step further: It determined that parts of the record actually
 "tend[ed] to undermine the credibility of the step-two
 reason." Romero, ¶ 21, 523 P.3d at 1015.
We part ways with the division on this score as well.

 ¶64
 One part of the record the division viewed as undermining the
 prosecutor's step-two reason was what it characterized as
 the trial court's "explicit findings that it
 'didn't see anything from [Prospective Juror F] that
 suggests that he was not adequately participating in the
 trial.'" Id. at ¶ 25, 523 P.3d at 1015
(second alteration in original).[9] To be sure, the trial court
 did share with the parties that it had not been focused on
 Prospective Juror F's demeanor and that it was thus
 unable to say whether he had been disinterested during the
 proceedings. But we do not consider this an "express
 finding[]" (or any type of finding) undermining the
 prosecution's race-neutral reason. At most, this remark
 communicated to the parties that the trial court was not in a
 position to independently confirm or repudiate the
 prosecution's race-neutral reason.

 ¶65
 Treating the aforementioned comment as expressly undermining
 the prosecution's race-neutral reason is especially
 unwarranted because the trial court eventually
 credited that reason. The finding actually made by
 the trial court (albeit impliedly) was that, despite not
 seeing anything itself related to Prospective Juror F's
 demeanor, the prosecutor's assertion that Prospective
 Juror F seemed disinterested was sincere.

 E.
The Trial Court's Ultimate Batson
Ruling at Step Three Was Not Clearly
 Erroneous

 ¶66
We stress that, even in the absence of express demeanor and
 credibility findings, we defer to a trial court's
 ultimate Batson ruling at step three if the record
 (1) reflects that the trial court considered all the relevant
 circumstances and (2) supports that ruling.
Beauvais, ¶¶ 32, 37, 393 P.3d at 519-20.
Here, the record checks both boxes. Therefore, the division
 erred in failing to defer to the trial court's ultimate
 Batson ruling.

 1.
The Record Shows the Trial Court Considered All the Relevant
 Circumstances

 ¶67
 Before denying Romero's Batson challenge, the
 trial court considered the following circumstances:

• There were only two prospective jurors in the jury
 pool who were members of a protected class (both
 Hispanic)-Prospective Juror F was one of them.

• The prosecutor exercised her second peremptory strike
 to excuse Prospective Juror F.

 • Right after the prosecutor struck Prospective Juror F,
 defense counsel exercised his second peremptory strike to
 excuse the other Hispanic prospective juror.

• The court generally took detailed notes during jury
 selection when "a potential juror start[ed] to say
 something that could, ultimately, be the basis for a
 challenge for cause"; it took no notes related to
 Prospective Juror F because whatever statements he made were
 unremarkable.

• Having said that, the court recognized that the
 prosecutor didn't strike Prospective Juror F based on
 something he said; rather, she did so based on her "read
 of his body language"-i.e., "he seemed to be
 disinterested."

• This wasn't a situation where Prospective Juror F
 had obviously fallen asleep or had obviously been
 "focused on a different part of the courtroom that had
 nothing to do with the trial." By contrast, a different
 prospective juror had "taken leave of what was going on
 in the courtroom" in a way "that was obvious."

• Because this wasn't a situation involving a
 prospective juror who was obviously disinterested,
 it was difficult for the trial court to analyze the
 prosecutor's race-neutral reason for striking Prospective
 Juror F: The strike was "based on nothing more than
 perception of whether or not somebody appears to be
 interested or not interested, and that's a very
 subjective kind of thing." But while this was a
 subjective reason, the trial court realized it "could be
 the basis for a valid preemptory [sic] challenge."

• The trial court "wasn't paying attention to
 [Prospective Juror F's] [demeanor] for that kind of an
 assessment, and so [it didn't] have an independent
 reading on whether he was truly disinterested or not."

• Although nobody had previously raised any concern
 about Prospective Juror F's lack of interest in the
 proceedings-a point raised in rebuttal by defense
 counsel-this didn't move the needle for the trial court.
Instead, the court reasoned that the observation "that
 somebody seems disinterested is not the kind of thing"
 that needs to be brought up before

the parties' exercise of peremptory strikes unless the
 prospective juror was "actually sleeping during the
 proceedings." Therefore, concluded the court, this was
 "something that the prosecution or the defense could
 simply note in their notes and . . . then use that later when
 it came to a preemptory [sic]."

• Defense counsel didn't notice Prospective Juror F
 being disinterested.

• During the entire exchange concerning Romero's
 Batson challenge, the trial court observed firsthand
 the prosecutor's demeanor.

• The trial court also observed firsthand that the
 prosecutor promptly uttered her race-neutral reason in
 response to the Batson challenge; in fact, she did
 so before the court could make the requisite finding at step
 one.

 These
 were all relevant circumstances. And we cannot think of
 others the trial court failed to account for; nor did defense
 counsel point the court to any during the Batson
 colloquy.

 2.
The Record Supports the Trial Court's Ultimate Ruling at
 Step Three

 ¶68
The trial court ultimately ruled that Romero failed to
 satisfy his burden of proving that the prosecutor's
 peremptory strike vis-a-vis Prospective Juror F was motivated
 by purposeful racial discrimination. And we now conclude that
 this ruling is supported by the record.

 ¶69
 To rebut the prosecutor's race-neutral reason, defense
 counsel complained that no one had previously raised any
 concerns about Prospective Juror F being disinterested. But
 the trial court didn't ascribe any significance to this
 contention, correctly explaining that the prosecutor was not
 required to alert it, before the

 exercise of peremptory strikes, to Prospective Juror F's
 disinterest in the proceedings.

 ¶70
 And so, one rebuttal assertion remained: Defense counsel
 stated that he himself had not seen Prospective Juror F being
 disinterested. We assume for purposes of our analysis that
 defense counsel was paying attention to Prospective Juror F,
 and we thus consider this contention to have undermined the
 prosecutor's race-neutral reason. Even so, the trial
 court was left with opposing views by the parties: The
 prosecutor had noticed that Prospective Juror F seemed
 disinterested; defense counsel had not. And, as mentioned,
 the trial court had admittedly not been paying close
 attention to Prospective Juror F's demeanor and was not
 in a position to break the tie. Consequently, the record was,
 at best, in equipoise as to whether Prospective Juror F had
 been truly disinterested. The problem for Romero is that
 he had the burden of showing by a preponderance of
 the evidence that the prosecutor had engaged in purposeful
 racial discrimination. Equipoise falls short of this burden.

 ¶71
 Having considered all the relevant circumstances, as well as
 the persuasiveness of the prosecutor's race-neutral
 reason in light of the rebuttal arguments advanced, the trial
 court concluded that Romero had failed to meet his burden of
 proving purposeful racial discrimination. This finding is
 supported by

 the record. Accordingly, the trial court did not clearly err
 in denying the Batson challenge and releasing
 Prospective Juror F.

 F.
A Final Word

 ¶72
 Before putting a bow on this opinion, we take a moment to
 emphasize two points. First, we urge trial judges again to
 make explicit demeanor and credibility findings at step
 three. See Beauvais, ¶ 29, 393 P.3d at 518.
While implicit findings may suffice, the best approach is to
 make explicit findings. Id.

 ¶73
 Second, we reiterate that our opinion should not be read as
 supporting the notion that a subjective, demeanor-based
 reason at step two will always be enough to survive clear
 error review at step three. We expect that in many cases it
 won't be. Had the trial court here gone the other way and
 declined to credit the prosecutor's articulated reason at
 step two (viewing it instead as a pretext), and had it done
 so with record support (e.g., explicit or implicit demeanor
 and credibility findings) and based on all the relevant
 circumstances present, the Batson challenge would
 have been sustained and would have subsequently withstood
 clear error scrutiny in the event the prosecution could have
 appealed. And had the case eventually landed in our court,
 our ruling would have favored Romero (the polar opposite of
 today's decision) because the trial court's
 step-three ruling also would have favored Romero, and we
 would have deferred to that

 ruling in reviewing for clear error. That's a byproduct
 of a standard of review that's highly deferential to
 trial courts.

 ¶74
 The lesson here is that a trial judge's sound decision
 whether or not to credit a race-neutral reason is a rather
 consequential determination with critical importance upon
 review. A step-three Batson ruling grounded in all
 the relevant circumstances and supported by the record
 deserves great deference under the clear error standard of
 review.

 IV.
Conclusion

 ¶75
 For the foregoing reasons, we reverse the division's
 judgment and remand with instructions to consider the other
 arguments Romero raised on appeal. On this record, the
 division should have affirmed the trial court's
 Batson ruling.

---------

[1] Under Colorado law, a party may excuse
 a prospective juror in two ways: (1) by using a for-cause
 strike-i.e., by relying on any of the statutory bases
 providing cause to excuse a prospective juror (generally due
 to a conflict of interest or an inability to be fair and
 impartial); or (2) by using a peremptory strike, which
 permits the excusal of a prospective juror for any reason or
 no reason at all. People v. Johnson, 2024 CO 35,
 ¶ 11, 549 P.3d 985, 989; § 16-10-103 (1), C.R.S.
(2023); § 16-10-104, C.R.S. (2023); Crim. P. 24 (b)(1),
 (d). Although there are "no questions asked" with
 peremptory strikes, Flowers v. Mississippi, 588 U.S.
 284, 293 (2019), the exercise of such strikes is not without
 limits-it "is subject to the commands of the Equal
 Protection Clause," which forbids a party from striking
 prospective jurors on account of their race, Batson v.
 Kentucky, 476 U.S. 79, 89 (1986), or gender, J.E.B.
 v. Alabama ex rel. T.B., 511 U.S. 127, 129 (1994).
(Gender discrimination is not implicated here, so we limit
 our analysis to racial discrimination.) Batson
 established a three-step process for resolving an allegation
 by a party that a peremptory strike exercised by the opposing
 party was based on a prospective juror's race.
Batson, 476 U.S. at 96-98. First, the objecting
 party bears the burden of making a prima facie showing that
 the strike was race-based. Id. at 96. Second, the
 striking party bears the burden of articulating a
 race-neutral reason for the strike. Id. at 97. And
 third, the trial court must determine whether the objecting
 party has met the burden of showing purposeful racial
 discrimination by a preponderance of the evidence.
Id. at 98.

[2] We understand
 "disinterested," as used by the parties, the trial
 court, and the division, to mean lacking attention or care
 for the proceedings (i.e., uninterested) rather than lacking
 a personal motive or stake in the proceedings (i.e.,
 unbiased). See Beauvais, ¶ 9 n.3, 393 P.3d at
 514 n.3 (citing Disinterested, Webster's
 Third New International Dictionary (2002)). That is also
 how we use the term in this opinion.

[3] For brevity's sake, throughout
 this opinion, we generally describe the prosecution's
 race-neutral reason by referring simply to Prospective Juror
 F's disinterest or lack of attention.

[4] Bias related to an individual's
 Hispanic identity is technically ethnicity-based, not
 race-based. See People v. Ojeda, 2022 CO 7, ¶ 1
 n.1, 503 P.3d 856, 858 n.1. However, as we've done
 before, and in line with Supreme Court precedent, we use the
 term "race" here expansively to encompass both race
 and ethnicity. Id.

[5] Although Batson mandates that
 trial courts make a finding at the end of each of the first
 two steps before proceeding to the next step, a
 Batson colloquy sometimes unfolds as it did here:
 Before the court can get a substantive word in edgewise, the
 analysis has already proceeded to step three. In fairness to
 trial courts, Batson's analytical framework
 feels unnatural for two reasons. First, it compels trial
 courts to make findings at steps one and two without
 requiring a response from the party not bearing a burden.
Trial courts are not used to proceeding in that fashion; they
 generally don't rule on an issue until both sides have
 been heard on it. Second, the striking party may fail to
 resist the temptation to jump the gun at step one by
 conveying what that party believes is a race-neutral reason
 before the finding required of the court (regarding whether
 the objecting party has made the prerequisite prima facie
 case), while the objecting party may fail to resist the
 temptation to jump the gun at step two by responding to the
 striking party's alleged race-neutral reason before the
 finding required of the court (regarding whether the striking
 party has come forward with a race-neutral reason for
 exercising the peremptory strike).

[6] Strictly for convenience, we refer to
 the division majority as "the division."

[7] Crim. P. 24(d), titled
 "Peremptory Challenges," merely provides the
 procedural mechanism to implement the substantive right
 created by statute.

[8] To be sure, determining whether a
 record contains implicit demeanor and credibility findings
 supporting a trial court's decision to credit the
 prosecutor's race-neutral reason is not an easy task-it
 is a context-intensive inquiry. But that doesn't mean it
 is impossible. On the flip side of the coin, not every record
 lacking express demeanor and credibility findings supporting
 a trial court's decision to credit the prosecutor's
 race-neutral reason should be construed as containing
 implicit demeanor and credibility findings supporting that
 decision. Here, had the trial court denied the
 Batson challenge without making any remarks and
 without considering any of the relevant circumstances or,
 worse, after directly questioning the prosecutor's
 credibility and negatively commenting on her demeanor,
 we'd likely be singing a different tune now. We're
 hard-pressed to imagine that such a record could be
 accurately described as containing implicit demeanor and
 credibility findings supporting the trial court's
 decision to credit the prosecutor's race-neutral reason
 for striking Prospective Juror F.

[9] The other part of the record on which
 the division relied was defense counsel's comment that he
 didn't notice Prospective Juror F being disinterested.
This was an accurate reflection of what defense counsel said.
As we discuss later, however, while this assertion may have
 undermined the prosecutor's race-neutral reason, the
 trial court did not clearly err in concluding that it
 wasn't enough to carry the defense's burden of proof
 at step three.

---------