23CA1897 Peo v Arellano 04-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1897
Jefferson County District Court No. 22CR2704
Honorable Randall C. Arp, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Richard Lee Arellano,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Johnson and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

---

Philip J. Weiser, Attorney General, Patrick A. Withers, Assistant Solicitor
General and Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-
Appellee

Eric A. Samler, Alternate Defense Counsel, Hollis A. Whitson, Alternate
Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Richard Lee Arellano, appeals his convictions for various offenses arising out of an incident in which he stole numerous items from a Walmart.  We affirm.

## I.     Background

¶ 2     Arellano and a companion attempted to leave a Walmart through a fire exit with a shopping cart full of unpaid-for items.  A first loss prevention officer (LPO) confronted them near the exit and told them to leave the items and come to the office.  Arellano refused and opened his jacket pocket, revealing something metallic inside.

¶ 3     At this moment, a second LPO approached.  When the second LPO was about fifteen feet away, Arellano took a gun from his pocket and pointed it at the second LPO, who backed up and told Arellano to take the items.  Arellano then fled the store, fled from police, fired his gun at police, and was eventually arrested.

¶ 4     Arellano was ultimately convicted of two counts of attempted second degree murder for shooting at two police officers, one count of attempted reckless manslaughter for shooting at a third police officer, and felony menacing.  He was also convicted of four counts of aggravated robbery — two for each LPO (the multiple aggravated

robbery counts for each victim were based on slightly different theories).  At sentencing, the four aggravated robbery convictions merged into two, such that Arellano was punished for one aggravated robbery conviction for each LPO.

¶ 5      On appeal, Arellano argues that the evidence was insufficient to support his aggravated robbery convictions as to the second LPO and that the trial court erred by denying his *Batson* challenge to a prospective juror.  We disagree with both arguments and affirm.

## II.     Sufficiency of the Evidence

¶ 6      We review the sufficiency of the evidence de novo.  *People v. Black*, 2020 COA 136, ¶ 34.  This inquiry requires us to view the evidence as a whole and in the light most favorable to the prosecution, giving the prosecution the benefit of all reasonable and fair inferences from the evidence.  *Id.*  Viewing the evidence this way, it is sufficient if it would support a conclusion by a reasonable mind that the defendant is guilty of the offense beyond a reasonable doubt.  *People v. Donald*, 2020 CO 24, ¶ 18.

¶ 7      Arellano argues that there was insufficient evidence that he took something from the person or presence of the second LPO — a required element of both aggravated robbery convictions at issue

here.  *See* §§ 18-4-301(1), 18-4-302(1)(b), (d), C.R.S. 2025.  We disagree.

¶ 8     Property is in a victim's presence if (1) the victim has the right to exercise control over the property; and (2) the property is within the victim's reach, inspection, or observation such that the victim would be able to retain control over the property but for the defendant's threat of force.  *People v. Mortenson,* 2023 COA 92, ¶ 8. Arellano concedes, and we agree, that the second LPO had the right to exercise control over the items in the shopping cart.  And the evidence was more than sufficient to establish that the second LPO was able to observe the items and would have been able to exercise control over them had Arellano not pointed a gun at him.

¶ 9     In his opening brief, Arellano does not dispute that the evidence showed that when the second LPO approached Arellano and the items in the shopping cart, Arellano pointed a gun at him. Arellano also concedes that the second LPO was about fifteen feet away when Arellano pointed his gun at him.  He further concedes that the second LPO then started stepping backwards and told Arellano to take the items in the shopping cart.

¶ 10    Viewing this evidence in the light most favorable to the prosecution, we conclude it was sufficient to establish that the stolen property was within the second LPO's observation and he would have taken it back had Arellano not pointed a gun at him.

¶ 11    We are not persuaded otherwise by Arellano's reliance on *Mortenson*.  In that case, the evidence was insufficient to establish aggravated robbery because the defendant did not successfully take anything from the alleged victim's presence — the alleged victim tackled the defendant before that could happen, thereby retaining control over the supposedly stolen property.  *Id.* at ¶ 14.  Here, there is no dispute that Arellano left with the stolen property after threatening the second LPO with a gun.

¶ 12    We therefore reject Arellano's sufficiency challenge.

### III.    *Batson* Challenge

¶ 13    Arellano also argues that the trial court erred by ruling that the prosecution's peremptory strike of a Hispanic juror was not motivated by race.  We disagree.

¶ 14    A peremptory strike may not be used to excuse a juror based on their race.  *People v. Beauvais*, 2017 CO 34, ¶ 20.  *Batson v. Kentucky*, 476 U.S. 79 (1986), lays out the three-part procedure

4

meant to enforce this rule. First, the objecting party must make a prima facie showing that the strike is based on the juror's race. *Batson*, 476 U.S. at 96. Second, if the step-one showing is made, the burden shifts to the striking party to provide a nondiscriminatory reason for the strike. *Id.* at 97. Third, if the step-two reasons are nondiscriminatory, the court must determine if the objecting party has shown purposeful discrimination by a preponderance of the evidence. *Id.* at 98.

¶ 15 Arellano challenges only the trial court's step-three determination that he failed to show purposeful discrimination. We review step-three determinations for clear error. *Beauvais*, ¶ 22. This means we give great deference to the trial court's ruling and will reverse only if the ruling "find[s] no support in the record." *Id.* at ¶¶ 22, 25. Indeed, reversal of a step-three ruling is proper only under exceptional circumstances. *Id.* at ¶ 22.

¶ 16 The juror in question here, Juror M, was a Hispanic man. After defense counsel alleged that the strike was based on his race, the prosecution offered three nondiscriminatory reasons for the strike: (1) Juror M put too much emphasis on body camera footage; (2) he misapprehended what it means to act after deliberation; and

(3) his cell phone went off several times during voir dire, creating disruptions.  The trial court accepted these reasons and found that Arellano had not proved purposeful discrimination.  We perceive no clear error because there is at least some record support for this ruling.

¶ 17     First, during voir dire, Juror M said that it would be "tough" to decide what happened in a case without video evidence, including bodycam footage, of the incident.

¶ 18     Second, Juror M demonstrated some difficulty with the concept of acting after deliberation.  The prosecutor showed the jury pool a clip from a movie in which a character is playing a guitar downstairs at a party.  Another character walks down the stairs, hears the guitar, stops, and then approaches the guitarist and grabs the guitar.  The prosecutor asked jurors, including Juror M, whether the character who grabbed the guitar did so after deliberation:

> Prosecutor: [D]o you think that [the character] acted in deliberation or do you think it was a spur of the moment type thing?
>
> Juror M: Probably a spur of [the] moment.
>
> Prosecutor: And why do you think that?

> Juror M: Just the way he came down the stairs and what his body language was.

This exchange at least suggested that Juror M misunderstood the concept of acting after deliberation.

¶ 19    Third, as for the repeated disruption from Juror M's cell phone, the record does not indicate that there was more than one disruption, or that the single recorded disruption was Juror M's phone.  But as the prosecution points out, all that is required to survive clear error review at step three is the absence of affirmative evidence in the record refuting the plausibility of the nondiscriminatory reason.  *People v. Romero*, 2024 CO 62, ¶ 54.  And there is nothing in the record here affirmatively refuting this third nondiscriminatory reason.

¶ 20    We therefore conclude that the record supports the trial court's determination that Arellano failed to establish purposeful discrimination at step three.  Accordingly, the court did not clearly err by denying Arellano's *Batson* challenge.

## IV.   Disposition

¶ 21    The judgment of conviction is affirmed.

JUDGE JOHNSON and JUDGE GOMEZ concur.

7